**SECURITY PACIFIC MORTGAGE AND REAL ESTATE SERVICES, INC., Plaintiff,**

v.

**HERALD CENTER LIMITED f/k/a Voloby Limited, Herald Center, Inc., NYL, Inc. f/k/a Greatneckers, Inc. d/b/a the New York Land Company, NYL Properties, Inc., the People of the State of New York, the City of New York, Nastasi–White, Inc., Meltzer Mechanical Contractors, Inc., Empire City Iron Works, Roth Painting Company, Inc., Central Pump Service Corp., W & W Products, Inc., David Shuldiner, Inc., Safety Lift Company, Able Sprinkler Company, Inc., Airkem–Manhattan, Inc., Robert V. Samuels, Inc., Glockhurst Corporation, N.V., New York State Tax Commission and the Republic of the Philippines, Defendants.**

**No. 87 Civ. 3628 (PNL).**

United States District Court, S.D. New York.

July 1, 1988.

Weil, Gotshal & Manges, Michael K. Stanton, Lesley E. Goldberg, Kenneth L. Bressler, Adam L. Wekstein, Konrad L. Cailteux, New York City, for plaintiff.

Paul, Weiss, Rifkind, Wharton & Garrison, Robert S. Smith, Pamela S. Hoopes, New York City, Shereff, Friedman, Hoffman & Goodman, Andrew J. Levander, Elliot Dobin, New York City, for defendant Herald Center, Ltd.

Phillips, Nizer, Benjamin, Krim & Ballon, Perry S. Galler, Lawrence M. Sands, New York City, for defendants NYL, Inc. and NYL Properties, Inc.

Golenbock, Eiseman, Assor, Bell & Perlmutter, David J. Eiseman, New York City, for defendant Glockhurst Corp., N.V.

## MEMORANDUM AND ORDER

LEVAL, District Judge.

Security Pacific Mortgage and Real Estate Services, Inc. ("Security Pacific"), mortgagee of a leasehold interest in the building at One Herald Square in New

**46**

York City known as Herald Center, moves for summary judgment of foreclosure. The mortgagor Herald Center Limited ("HCL") does not contest the fact of numerous defaults on its mortgage obligations.[1] Nor does it dispute that the terms of the mortgage agreement permit foreclosure in the event of such defaults. HCL raises a number of affirmative defenses which, it asserts, defeat the claimed entitlement of Security Pacific to summary judgment of foreclosure. The New York Land Company[2], as manager of the building under a contract with HCL, also asserts affirmative defenses and claims rights under a Management and Development Agreement that supercede those of mortgagee.[3] No judgment is sought against defendant The Republic of the Philippines. The Philippines has not opposed the motion for summary judgment.

For the reasons discussed below, summary judgment of foreclosure is granted.

### The Parties, Background and Prior Proceedings

Herald Center Limited ("HCL") is the lessee of Herald Center at One Herald Square. The fee is owned by John Hancock Mutual Life Insurance Company. New York Land has a contract with HCL to manage and develop the property. Manhattan Land Company, Inc. is an affiliate of New York Land. Joseph Bernstein, a principal of New York Land, claims to be the duly appointed managing director of HCL. Karl Peterson, who is affiliated with Adnan Khashoggi, disputes Bernstein's authorization and claims to be the duly appointed managing director.

Herald Center is also the subject of an action brought by the Republic of the Philippines which alleges that it and three other Manhattan properties were purchased by Ferdinand Marcos with funds misappropriated from the Philippines. The other properties are 730 Fifth Avenue, 200 Madison Avenue and 40 Wall Street. Security Pacific has a mortgage interest in each of the properties except 40 Wall Street which is under mortgage to Citibank (to which summary judgment of foreclosure was recently granted). *Citibank, N.A. v. Nyland*, 692 F.Supp. 1488 (S.D.N.Y.1987).

The Philippines' suit was brought on March 2, 1986, in New York State Supreme Court against the Marcoses, Herald Center Limited, New York Land, and others, seeking possession of the properties under a constructive trust theory. That court issued a temporary restraining order prohibiting defendants from impairing the equity value of the properties to the detriment of the Philippines' claim. The case was then removed to this court by reason of diversity and the restraint was continued, first as a TRO and then as a preliminary injunction. *See* Opinion and Order of May 2, 1986, as amended May 5, 1986, *The Republic of The Philippines v. Marcos*, 86 Civ. 2294(PNL). The Court of Appeals upheld the preliminary injunction on November 26, 1986. 806 F.2d 344 (2d Cir.1986), *cert. denied*, 481 U.S. 1048, 107 S.Ct. 2178, 95 L.Ed.2d 835 (1987).

Soon thereafter, the Philippines moved for the appointment of a temporary receiver to manage the properties. On January 13, 1987, I found that precautions were necessary to protect the equity value of the buildings. (Opinion of Jan. 13, 1987), 653 F.Supp. 494. I noted the emergency occasioned by numerous defaults at the properties managed by the New York Land Company, as well as apparent diversions of

---

1. Two parties claim authority to speak for, and manage, Herald Center Limited. The Bernstein faction is represented by Paul, Weiss, Rifkind, Wharton & Garrison. The faction associated with Karl Peterson and Adnan Khashoggi is represented by Shereff, Friedman, Hoffman & Goodman. The same two factions claim to represent Nyland (CF8) in the parallel *Citibank* foreclosure action before Judge Knapp involving 40 Wall Street, and claim to represent Canadian Land Co. in the parallel action for fore-closure of the Security Pacific mortgage on 730 Fifth Avenue.

2. Defendant NYL, Inc., d/b/a/ The New York Land Company, will be referred to as "New York Land."

3. In addition Manhattan Land, Inc. claims to have a surviving interest in the property by virtue of a claimed contract to purchase the stock of HCL.

funds and the serious conflicts of interest on the part of Joseph and Ralph Bernstein, the principals of New York Land. On that basis, this Court appointed a Special Property Adviser. (Opinion of April 29, 1987), *aff'd, Republic of Philippines v. New York Land et al.*, 852 F.2d 33 (2d Cir. 1988).[4]

In the mortgage foreclosure action concerning 40 Wall Street, Judge Knapp granted summary judgment of foreclosure against the mortgagor Nyland as well as against the New York Land Company on the basis of defaults similar to those at Herald Center. *Citibank, N.A. v. Nyland,* 692 F.Supp. 1488 (S.D.N.Y.1987).

In a mortgage foreclosure action brought by Security Pacific concerning 730 Fifth Avenue (the Crown Building), this court granted summary judgment of foreclosure against mortgagor Canadian Land Company of America, N.V. on the basis of similar defaults. *Security Pacific v. Canadian Land Co. of America, N.V., et al.,* 690 F.Supp. 1214 (1988).

Security Pacific Mortgage Corporation, as lender, and Herald Center Limited, as borrower, entered into a Building Loan Agreement on July 20, 1984.[5] Security Pacific agreed to lend approximately $40 million to aid in the renovation of Herald Center. The parties also executed a Consolidation Agreement, a mortgage note and a mortgage of the leasehold interests of HCL. The mortgage entitles the Bank to accelerate the indebtedness and to foreclose after a default has occurred. The maturity date for the loan was July 22, 1987. The mortgage was recorded on July 25, 1984. As of October 6, 1987, the Bank had advanced approximately $38 million to HCL under the terms of the Building Loan Agreement.

As further security for the loan, a Second Mortgage was executed on July 20, 1984 between Security Pacific Mortgage Corporation and Glockhurst Corporation, N.V. which owned the building at 200 Madison Avenue and was lessee of the underlying land. This collateral mortgage provides that 200 Madison Avenue is to be sold to satisfy any deficiency in HCL's indebtedness to the Bank remaining after a sale of Herald Center.

Since July 1986 Herald Center Limited has failed to pay interest and late penalties owed under the mortgage. In light of the enormous defaults the Bank declared the entire unpaid sum of the note due immediately by an Acceleration Letter dated January 26, 1987. Further defaults followed and created a new and independent entitlement to foreclose. By the time the Bank instituted this foreclosure action in April 1987 (after notice and ample opportunity to cure the defaults), HCL had defaulted on several million dollars in unpaid interest and late charges. Additional defaults occurred over the following months and the figure owing the Bank reached $5.6 million by October 1987 when Security Pacific moved for summary judgment. In addition, by October 1987 the Bank had paid over $1.2 million in real property taxes and penalties to New York City and ground rent to John Hancock in order to prevent a default under the Ground Lease.[6] Bullock Affidavit ¶¶ 29–30. It is conceded that these massive deficiencies have not been cured and that HCL's defaults have continued to grow.[7]

---

**4.** Concern that appointment of a receiver might constitute a default under the Companies' ground leases and mortgages led the court to appoint a Special Property Advisor rather than a receiver. The Special Property Advisor oversees the management of the properties but does not displace the manager and cannot exercise other powers normally held by a receiver. Although the Special Property Advisor makes recommendations concerning leases, contracts, and payments, none may go forward without court approval.

**5.** Security Pacific Mortgage Corporation assigned the Herald Center Mortgage agreements to Security Pacific Mortgage and Real Estate Services, Inc. on November 11, 1985.

**6.** Mortgagor's failure to make the tax and rent payments each constitutes a default under the terms of the Consolidated Mortgage.

**7.** The specific, largely uncontested instances of default which entitle the Bank to foreclose arise from HCL's failure to comply with numerous obligations under the mortgage agreements:

Security Pacific asserts as an additional consideration bearing on its claimed entitlement to foreclosure that the entirety of HCL's indebtedness to the Bank became due on July 20, 1987 by virtue of the maturity of the Consolidated Mortgage. Security Pacific maintains that, whatever the validity of HCL's affirmative defenses regarding prior defaults, there can be no excuse for the continuing failure since July 1987 to pay the principal owed.

## DISCUSSION

Herald Center Limited contends that questions of material fact barring grant of summary judgment of foreclosure arise from the following issues:

### 1) *Waiver*

▮▮ Relying on an affidavit of Joseph Bernstein, defendants Herald Center Limited and New York Land assert that Security Pacific waived its right to foreclose on the Herald Center mortgage in order to permit the owners to negotiate a sale of the property in settlement of the *Philippines* action. Because the facts alleged are identical, I incorporate by reference the discussion in this court's opinion of June 28, 1988 of the same point as argued by the mortgagor in *Security Pacific v. Canadian Land Co. of America, N.V., et al.,* 690 F.Supp. 1214 (1988).

I note that, subsequent to the alleged waiver, Herald Center Limited defaulted on

(i) failing and omitting to pay monthly interest charges since July 1, 1986 and each and every month thereafter;
(ii) failing and omitting to pay after demand, late payment charges on account of non-payment of interest;
(iii) failing and omitting to discharge, by bonding or otherwise, mechanic's liens filed against the Premises within 45 days of such filing;
(iv) failing and omitting to enter into a Bank Tax Escrow Agreement as required by the Ground Lease;
(v) failing and omitting to pay installments of monthly rent due and payable under the Ground Lease on December 1, 1986 and each and every month thereafter;
(vi) failing and omitting to pay New York City real estate taxes due on January 1, 1987 as required by the Ground Lease and the Consolidated Mortgage;

its obligation to pay nearly $300,000.00 in interest on the loan due on December 1, 1986 and an additional $300,000 on January 1, 1987. Defendants do not dispute these additional defaults. Nor can they dispute that they received a letter from Security Pacific at the end of January 1987 accelerating the debt and demanding full payment. During the subsequent three months HCL not only failed to cure its existing defaults but failed to make additional interest payments.[8] Having afforded HCL more than ample opportunity to cure its new defaults, Security Pacific instituted this action at the end of April 1987.

Furthermore, defendants concede that the mortgage of Herald Center Limited became mature on July 20, 1987 and that the debt has not been repaid. This continuing default cannot be excused by any alleged waiver from November 1986.

I conclude for all the reasons given in the *Canadian Land* opinion dated June 28, 1988, as applied to these facts, first: even if there were a waiver as of November 10, 1986, it would in no way bar summary judgment of foreclosure in response to HCL's substantial subsequent defaults, as well as its failure to repay the debt after its natural maturity in July, 1987 [9]; second, that Bernstein's highly improbable allegation of oral waiver of the Bank's right to foreclose, denied by the Bank and contradicted by Bernstein's own prior assertion (as well as by common sense), is in any

(vii) failing and omitting to perform its obligations under the Building Loan Agreement to complete the Improvements on or before May 1, 1985.

8. Because mortgagor is entitled to no notice prior to acceleration of the debt (the notice of the Acceleration Letter was gratuitous), both the defaults before the Acceleration Letter and those between the Letter and the filing of the complaint constitute independent grounds for entitlement to foreclosure. Consolidation Agreement Exhibit C, ¶¶ 21(a), 38.

9. See e.g., *Johnson v. Gaughan,* 128 A.D.2d 756, 513 N.Y.S.2d 244, 245 (1987) ("even if accepted as true, [defendant's allegations] do not in any way affect the validity of the plaintiff's mortgage, and do not constitute a meritorious defense to the plaintiff's motion for summary judgment").

case insufficient under controlling New York precedent to raise an issue of material fact barring summary judgment of foreclosure.[10]

### 2) *New York Land Management Agreement*

 New York Land contends that its August 1983 Management and Development Agreement with Herald Center Limited bars foreclosure of the mortgage. New York Land's position as to this building is identical to its position vis-a-vis the Crown Building. The discussion in the opinion of June 28, 1988 in the *Canadian Land* action regarding Security Pacific's foreclosure of the Canadian Land mortgage is adopted. New York Land's management contract does not defeat Security Pacific's right of foreclosure.[11]

### 3) *Remaining Defenses*

Defendants' remaining defenses were raised in nearly identical terms in the *Canadian Land* foreclosure. Having considered the variations in fact as between the Crown Building and Herald Center, I conclude that the parties stand in the same position vis-a-vis these defenses as did the parties in that action.[12] The court's opinion of June 28, 1988 in *Security Pacific v. Canadian Land* is adopted here.

### *Glockhurst Collateral Mortgage*

Ruling is deferred on the motion for summary judgment as to the Glockhurst Second Mortgage. By this motion Security Pacific seeks summary judgment of foreclosure with respect to its collateral mortgage of 200 Madison Avenue, as well as the mortgage of Herald Center. Glockhurst N.V., the registered owner of 200 Madison Avenue, contends that Security Pacific may not foreclose on the collateral mortgage until it has proceeded against the principal security. By a separate action Security Pacific is also seeking foreclosure

of the Glockhurst mortgage by reason of Glockhurst's defaults. In this opinion, I do not rule on Security Pacific's motion for summary judgment of foreclosure of the Glockhurst mortgage.

### *Conclusion*

Because plaintiff has established that it is entitled to judgment as a matter of law and that no issue of material fact exists, the defendants' motion for discovery is denied; and summary judgment of foreclosure is granted in favor of plaintiff Security Pacific.

SO ORDERED:

---

10. To the extent the defendants advance the same arguments in support of an "estoppel," they fail for the same reasons, and others. *See Citibank, N.A. v. Nyland,* 692 F.Supp. 1488 (S.D. N.Y.1987).

11. As discussed in the *Canadian Land* opinion, the claim of Manhattan Land, Inc. must also be rejected.

12. The same conclusion applies to defendants' cross-motion for discovery relating to these defenses.